IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| WANDA K.W., | § | |
| PLAINTIFF, | § | |
| | § | |
| V. | § | CASE NO. 3:23-CV-200-S-BK |
| | § | |
| COMMISSIONER OF THE | § | |
| SOCIAL SECURITY ADMINISTRATION, | § | |
| DEFENDANT. | § | |

FINDINGS, CONCLUSIONS AND RECOMMENDATION
OF THE UNITED STATES MAGISTRATE JUDGE

Pursuant to 28 U.S.C. § 636 and *Special Order 3*, this appeal of the denial of Plaintiff's application for Social Security disability benefits is before the undersigned United States magistrate judge for findings and a recommended disposition. For the reasons below, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings herein.

## I. BACKGROUND

### A. *Procedural History*

Plaintiff seeks judicial review of the Commissioner's final decision denying her application for disability insurance benefits and supplemental security income under the Social Security Act (the "Act"). Doc. 1, *passim*; Doc. 7-1 at 19. Plaintiff filed her application in March 2019, alleging disability beginning in June 2017, based on blindness or "low vision," seizure disorder, hypothyroidism, degenerative disc disease of the left shoulder, status post rotator cuff surgery, insomnia, depression, anxiety, arthritis of the left shoulder, and left neck and shoulder

pain down to her hand.  Doc. 7-2 at 107, 113.  Her claim was denied at all administrative levels, and she now appeals to this Court under 42 U.S.C. § 405(g).

    *B. Factual Background*

Plaintiff was 53 years old on her alleged onset date, has a high school education, and previously worked as a "greeter" at a YMCA branch.  Doc. 7-2 at 108, 113.  Her relevant medical history begins with June 2017 records from Parkland Health and Hospital System, where she was treated for degenerative disc disease of her left shoulder, degenerative disc disease of the cervical spine, focal epilepsy, anemia, hemochromatosis, depression, and anxiety.  Doc. 7-2 at 488-Doc. 7-3 at 308; Doc. 7-3 at 477-Doc. 7-4 at 58; Doc. 704 at 375-405.  In July 2018, Plaintiff started behavioral health treatment, during which she disclosed always feeling depressed and that her depressive and anxiety symptoms began about five years earlier.  Doc. 7-4 at 14-15.  She was ultimately diagnosed with depression and an anxiety disorder.  Doc. 7-3 at 176; Doc. 7-4 at 15.

In October 2019, Plaintiff saw Dr. Barbara S. Dolan, Psy.D., for a psychological consultative examination.  Doc. 7-4 at 371-74.  Plaintiff reported a history of seizures and work-related injuries, and disclosed various symptoms related to her depression and anxiety, as well as problems with concentration and memory.  Doc. 7-4 at 371-72.  Dr. Dolan noted that Plaintiff's mood was depressed and her affect was constricted, and diagnosed Plaintiff with major depressive disorder.  Doc. 7-4 at 373-74.

After the state agency medical examiner's review of Plaintiff's claim at the reconsideration stage of the appeals process, Plaintiff submitted over 200 pages of new medical records to the administrative law judge (the "ALJ").  Doc. 7-4 at 428-659.  These records

chronicled various medical treatments, including mental health treatment, from March 2020 through November 2021. Doc. 7-4 at 428-659.

In March 2020, Plaintiff's neurologist ordered memory testing due to Plaintiff's reports of memory loss. Doc. 7-4 at 532. The test, conducted in May 2020, yielded impressions from Dr. Leslie D. Rosenstein, Ph.D., of low energy, poor attention and concentration, and moderate depression. Doc. 7-4 at 532, 573. Dr. Rosenstein noted that Plaintiff: (1) demonstrated a low average attention span and working memory for verbal material, (2) exhibited deficient learning, recall, and retention with respect to a list of spoken words, and (3) struggled to complete a task that required divided attention/set shifting ability. Doc. 7-4 at 573. Dr. Rosenstein also determined that Plaintiff's attention span and mood might be interfering with her learning and memory. Doc. 7-4 at 573.

In August 2021, Plaintiff began psychiatric treatment, during which she reported a number of mental health-related symptoms and ultimately received diagnoses of major depressive disorder, anxiety, and insomnia. Doc. 7-4 at 586-91.

    C.    *The ALJ's Findings*

In August 2022, the ALJ issued a decision finding that Plaintiff was not disabled. Doc. 7-1 at 33. The ALJ found that Plaintiff had not engaged in substantial gainful activity since her alleged onset date and had the severe impairments of (1) seizure disorder; (2) hemochromatosis; (3) degenerative joint disease and a history of rotator cuff tear in her left shoulder with surgical repair; (4) degenerative disc disease; and (5) major depressive disorder with anxiety. Doc. 7-1 at 22. The ALJ concluded, however, that none of Plaintiff's severe impairments, or any combination thereof, met or "medically equal[ed]" an impairment listed in the applicable

regulations.  Doc. 7-1 at 23.  The ALJ further found that Plaintiff retained the residual functional capacity ("RFC") to perform light work, subject to certain limitations.  Doc. 7-1 at 25.  Based on this RFC, the ALJ concluded Plaintiff could perform her past relevant work and, thus, was not disabled.  Doc. 7-1 at 32-33.

## II. APPLICABLE LAW

An individual is disabled under the Act if, *inter alia*, she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment" which has lasted or can be expected to last for at least 12 months.  42 U.S.C. § 423(d)(1)(A).  To determine whether a claimant is disabled, the Commissioner considers (1) whether the claimant is engaged in substantial gainful activity; (2) whether  the claimant's impairments are "severe"; (3) whether the claimant's impairment "meets or equals" one of the listings in the relevant regulations; (4) whether the claimant can still do her past relevant work; and (5) whether the impairment prevents the claimant from doing any other available work. *Webster v. Kijakazi*, 19 F.4th 715, 718 (5th Cir. 2021) (citing 20 C.F.R. § 404.1520(a)(4)).  The claimant bears the burden on the first four steps.  *Id.* (citation omitted).  The burden then shifts to the Commissioner to "prove the claimant's employability."  *Id.* (citation omitted).

The Court's review "is exceedingly deferential and limited to two inquiries: whether substantial evidence supports the ALJ's decision, and whether the ALJ applied the proper legal standards when evaluating the evidence."  *Taylor v. Astrue*, 706 F.3d 600, 602 (5th Cir. 2012). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Perez v. Barnhart*, 415 F.3d 457, 461 (5th Cir. 2005) (quotation marks and citation omitted).  The Court can neither "reweigh the evidence or substitute its judgment for

the Commissioner's." *Id.* A finding that substantial evidence does not exist "is appropriate only

if no credible evidentiary choices or medical findings support the decision." *Whitehead v.*

*Colvin*, 820 F.3d 776, 779 (5th Cir. 2016) (citation omitted).

## III. ANALYSIS

### A. The ALJ's RFC determination is not supported by substantial evidence.

Plaintiff contends that the ALJ erred under *Ripley v. Chater*, 67 F.3d 552 (5th Cir. 1995),

by failing to obtain a medical source statement to assess how her mental limitations affected her

ability to work. Doc. 10 at 21-22. Plaintiff further argues that the ALJ was "playing doctor" by

finding that her "moderate" limitations confined her to "unskilled" work, but that she retained

the RFC to perform "more than simple but less than complex tasks." Doc. 10 at 20-22.

Defendant responds that the ALJ was not required to request a medical source statement

because Dr. Rosenstein's findings were accounted for in the RFC determination which limited

Plaintiff to "more than simple but less than complex tasks," and there was "no question about the

accuracy of medical test results reported, requiring evaluation of background medical test data."

Doc. 11 at 6 (citation and internal quotation marks omitted). Defendant contends that the ALJ

simply "resolve[d] conflicting medical opinions in arriving at a supported RFC finding." Doc.

11 at 7 (citations omitted).

Upon review, the Court finds that Plaintiff's arguments have merit. In determining a

claimant's RFC, the ALJ may not—without a medical expert's opinions—derive the RFC solely

from evidence of her claimed medical conditions. *Ripley v. Chater*, 67 F.3d 552, 557 (5th Cir.

1995). The ALJ also may not rely on her own unsupported opinion of the limitations the

claimant's medical conditions might present. *Id.*; *see also Frank v. Barnhart*, 326 F.3d 618, 622

(5th Cir. 2003) (warning that the ALJ "must be careful not to succumb to the temptation to play doctor," as "lay intuitions about medical phenomena are often wrong") (citation omitted). Instead, the ALJ should request a "medical source statement" describing types of work the claimant can still perform despite his condition. *Ripley*, 67 F.3d at 557. Without such a statement, there is typically insufficient evidence to support an RFC determination. *Id.* at 557-58 (remanding the case with instructions to obtain a report from a treating physician regarding effects of the claimant's condition on his ability to work). "Medical source" is a term of art that includes treating, examining, and consultative healthcare workers. 20 C.F.R. §§ 404.1502(d), 416(i).

Here, there was no medical source evidence as to how Plaintiff's mental limitations affected her ability to work. Instead, the ALJ erroneously based Plaintiff's RFC on hearing testimony and medical records that were lacking in that regard, stating:

> Regard[ing] mental limitations, state agency psychologists determined the claimant's mental impairment was non-severe and did not assess her mental residual capacity. . . . The undersigned finds their opinion not persuasive because it is not supported by objective evidence and not consistent with the longitudinal medical evidence. More persuasive hearing level evidence, including hearing testimony, supports a finding of a severe mental impairment that causes moderate limitations in mental functioning. Due to seizures, depressed mood, anxiety, irritability, sleep disturbance, difficulty being around people, and difficulty remembering and concentrating. . . , the undersigned finds the claimant retains the ability to perform more than simple but less than complex tasks.

Doc. 7-1 at 31 (internal citations omitted). As demonstrated above, the ALJ was left with only "evidence which merely describes Plaintiff's medical conditions." *See Turner v. Colvin*, No. 3:13-CV-1458-B, 2014 WL 4555657, at *5 (N.D. Tex. Sept. 12, 2014) (Boyle, J.) ("[E]vidence which merely describes Plaintiff's medical conditions is insufficient to support the ALJ's RFC

determination."). And, as *Turner* notes, such evidence cannot support an RFC determination. *See id.*

Without an appropriate medical opinion, the ALJ's RFC determination lacks the requisite "foundational basis." *See Cary G. T. v. Comm'r, Soc. Sec. Admin.*, No. 3:20-CV-1948-BK, 2022 WL 954341, at *3 (N.D. Tex. Mar. 29, 2022) (Toliver, J.) (concluding that although "the RFC is ultimately the ALJ's determination," the ALJ erred because there was no apparent "foundational basis for that decision" where "no treating, examining, or consultative resource reviewed the impact of Plaintiff's conditions on his ability to work"); *Jim S. v. Saul*, No. 3:18-CV-2179-BH, 2019 WL 4694943, at *9 (N.D. Tex. Sept. 25, 2019) (Ramirez, J.) (finding that despite the many progress reports, clinical notes, and lab reports in evidence, none referred to the effects these conditions had on the claimant's ability to work, and the ALJ could not rely on that "raw medical evidence as substantial support for" the claimant's RFC) (citation omitted).

The Court thus concludes that the RFC is not supported by substantial evidence.

### B. The ALJ's error was not harmless.

Because "[p]rocedural perfection in administrative proceedings is not required," the Court "will not vacate a judgment unless the substantial rights of a party have been affected." *Mays v. Bowen*, 837 F.2d 1362, 1364 (5th Cir. 1988) (per curiam). Consequently, Plaintiff must show she was prejudiced by the ALJ's failure to rely on medical opinion evidence in assessing her RFC.

To establish prejudice, Plaintiff must show that the ALJ's failure to rely on a medical opinion as to the effects of her mental limitations on her ability to work casts doubt on the existence of substantial evidence supporting her disability determination. *See McNair v. Comm'r*

*of Soc. Sec. Admin.*, 537 F. Supp. 2d 823, 837 (N.D. Tex. 2008) ("Procedural errors in the disability determination process are considered prejudicial when they cast doubt onto the existence of substantial evidence in support of the ALJ's decision.") (citation omitted). "Courts in the Northern District [of Texas] have found that the ALJ's failure to rely on a medical opinion concerning the claimant's RFC necessarily casts doubt on the disability determination." *Amy Y. v. Comm'r of Soc. Sec.*, No. 5:22-CV-245-BQ, 2023 WL 5209813, at *7 (N.D. Tex. July 25, 2023) (Bryant, J.) (collecting cases), *adopted by*, 2023 WL 5216497 (N.D. Tex. Aug. 14, 2023) (Cummings, J.); *see also Cary G. T.*, 2022 WL 954341, at *4 (finding prejudice and remanding where the administrative record revealed that no treating, examining, or consultative medical resource had reviewed the effect of the claimant's conditions on his ability to work, and the ALJ assessed the RFC based on the claimant's testimony and the ALJ's own lay interpretation of medical records). Accordingly, remand is required as the ALJ's error was not harmless.[1]

## IV. CONCLUSION

For the foregoing reasons, the Commissioner's decision should be **REVERSED**, and this case should be **REMANDED** for further proceedings consistent with the findings herein.

**SO RECOMMENDED** on February 22, 2024.

RENEE HARRIS TOLIVER
UNITED STATES MAGISTRATE JUDGE

---

[1] In light of this conclusion, the Court need not address Plaintiff's remaining arguments. However, Plaintiff can nonetheless raise them on remand.

## INSTRUCTIONS FOR SERVICE AND
## NOTICE OF RIGHT TO APPEAL/OBJECT

A copy of this report and recommendation will be served on all parties in the manner provided by law.  Any party who objects to any part of this report and recommendation must file specific written objections within 14 days after being served with a copy.  *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). An objection must identify the finding or recommendation to which objection is made, state the basis for the objection, and indicate where in the magistrate judge's report and recommendation the disputed determination is found.  An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error.  *See Douglass v. United Servs. Auto. Ass'n,* 79 F.3d 1415, 1417 (5th Cir. 1996), *modified by statute on other grounds*, 28 U.S.C. § 636(b)(1) (extending the time to file objections to 14 days).